to hear your argument. Please court Vic Welsh for the Jordan family. Your honors, there's two primary issues in this case for requiring reversal. Was it error for the trial court to exclude all post sale evidence in this defective design case? And if so, did that error deny that Jordan's a fair trial? Were there substantial rights affected? The Mississippi Product Liability Act does not exclude evidence of post sale conduct or post sale events in a defective design case. In fact, date of sale is not even mentioned in the statute. The only burden placed on the plaintiff is to prove that the defect existed at the time the product left the manufacturer. In this case, all experts agreed on the theory of the defect. If Buckyballs was a children's toy, it was defective. The magnets were too strong, four times the federal standard. And children's toy is a defined term. It's an object that could be sold or marketed as a plaything to children under the age of 14. That comes from the standard F 963 section 3.1.81 and or is an important term. If any of those factors are in evidence, then it's a children's toy. Also under the regulation 16 CFR 1200.2, a children's product is any object that could foreseeably be used by children. What the exclusion rule in a defective design case is really about is that you can't put on proof of a post sale alteration or modification to show that the product was defective at the time of sale. Rule 407. But you can put post sale proof on for another purpose. For example, alternative feasible design. This cop, this court commented or member of this court commented on this general principle. The evidence, the post sale evidence must be relevant to the theory of the defect that comes from month. The Ford Motor Company 461 F 3567 Justice Clement was on the panel. In that case, the issue was whether the who had the burden of proof to show a post trial alteration. The defendant site Dykes versus Husker Varner. In that particular case, the defendants offered post sale evidence to rebut a defect claiming that the condition of the tractor had changed at the time of injury. Again, post sale evidence can always be introduced in a defective design case if it's related to the theory of the defect. Now, I'd like to get to the second point, whether the Jordans were denied a fair trial, whether there's or before you before you get from the first point, let's just hone in. I mean, we've read the briefing and, you know, the horrific injury to the child and so forth, and we got it. But this is drilled down on the points of error. So I mean, I read some of this transcript is actually somewhat confusing, but you're going back and forth and so forth. So just succinctly put, you have stated what federal rule of evidence 407 specifically precludes. So just dial in straight forward. What was the specific post sale evidence that you wanted to get in that didn't fall within the prohibition of 407? I'm just still not clear on that. Sure, Your Honor. Let me back up and then I'll answer the court's question. During trial or when trial started, we were told that Maxfield and Overton would not take the position that their warnings were approved. The opinion that that the entire Consumer Product Safety Commission had found Bucky Balls to be adult toy that was not disclosed to us. It was only disclosed through the opinion of Nancy Nord, but she adopted that as the opinion of the full commission. So these are the post sale documents that should have been allowed into evidence in order to rebut that proof. July 10, 2012 post sale. CPSC compliance staff sent a letter to Maxfield and Overton. Bucky Balls was a substantial product hazard, violated the magnet standard for a children's toy, instructed Maxfield and Overton to stop all sales and recall all products. It was clear that the Consumer Product Safety Commission was regulating Bucky Balls as a children's toy. July 23, 2012, a letter from CPSC Office of General Counsel to Maxfield and Overton. We're getting ready to publish this, our notice of regulatory activity in the media that Bucky Balls is a children's toy and should be recalled because it violates. All right, hold it. All right. Oh, stop your train. All right. I'm just trying to make sure I get it again. The argument was about post sale evidence. OK, see, see, that sounded to me like warning. So are you talking about post sale warnings vis a vis adult? And that's why I'm trying. I'm having trouble between the post sale kind of stuff, 407 versus the profit. You saying, you know, y'all did a whole lot of back and forth about warnings about Nancy Nord and all of that sort of stuff. So are the sites you're giving that you are those post sale warnings that were put out that said it was an adult or child or were they post sale kind of profits? That's why I'm confused. It's post sale evidence to rebut their proof that the Consumer Product Safety Commission had approved their warnings. The courts got to understand that this was not a warnings case, but warnings was a component of the theory of the defect. Maxfield and And the jury was misled to believe that the warnings were approved by the Consumer Product Safety Commission. Look, the jury was left with a record that essentially parenterally found that the Consumer Product Safety Commission had made a finding that this product was not defective. And that was through Miss Nord's testimony. And I don't see where at trial you tried to impeach her and show that she was not credible, show that she had bias, which is a lot of the evidence you're bringing up now. And to me, the court's motion in Lemony didn't say you couldn't cross examine for bias or truthfulness, which is that's the core of any impeachment. So I don't see where in the record were you denied the opportunity? Did you try and were denied the opportunity to impeach Miss Nord's on cross examination? She testified that warnings were approved and I brought to the court. The 2013 responses under oath from the Consumer Product Safety Commission, where they denied that they had ever approved Maxville and Ogleton's warnings. I asked to use that document and display that document to the jury in order to impeach your testimony. The only thing that I was allowed to do, Your Honor, was to show that document to her and an attorney of 40 years with 40 years experience when faced with a clear contradiction in her testimony, these responses request permissions responded. Help me, Mr. Welsh. I don't understand you. We were never allowed to show that document to the jury or any of these other documents. Okay, I thought you just said you did, but what about all the bias evidence you're now talking about in your brief, especially her connection to the defendant company, how many times she's spoken out about this at conferences and you think she was just had too close of ties to them. Where was that? Where were you not allowed to get into that on cross examination? During her initial questioning, there was some back and forth about her relationship with Mr. Zucker. She commented that she could not get into that information as it was post sale. Your Honor is correct. I did not press her on that. I mean, you have to find a judge's ruling. I mean, if a witness and say, I'm not going to talk about something you you ask the judge to make or say, respond to your question if she's being nonresponsive, but I don't see a judicial ruling that limited you from bringing in all this evidence of alleged bias, but you can go on. Yes, if you look in the record, Mr. Welch, did you ever offer that information that which you're now calling impeachment information? We did not proffer the bias information. Two reasons. One, I had a document that showed her testimony was factually incorrect. That was our clear path are clear. Yes, that documents in the record. It's the the request for admissions amended responses to request for admissions. It's in the record of 56 11. Each of these documents that I'm describing to the quarter in the record, the CPS compliance letter 59 98. The second letter that was discussed 6002 the administrative complaint. You identify those as impeachment efforts as opposed to post sale documents. The we did this witness to two of them that we did the request for admissions, which are in the record at 56 11. And then the hazard hazardous magnet briefing package, which is in the record at 2161821706. I believe that was offered as a as a an exhibit. Some of these exhibits were withdrawn, but there were those two specific exhibits we often for impeachment purposes and your honors. Getting back to Judge Stewart's question about documents that were excluded. One of the documents that was excluded was a the complaint that the CPSC filed against Maxfield and Overton and in the complaint specifically said that the complaint that complaints in the record 5303 to 6 to 5 3 16 and that buckyballs were substantial product hazard again. Clear indication that that the Consumer Product Safety Commission continued to regulate buckyballs as a children's toy and that it never approved the warnings and in your honors, if you don't want to take my word for what these documents say, then I would invite you to look at the 10th case. That's see the problem is, you know, the problem is you're saying they're in the record. So we got to plummet through the record trying to find this stuff as opposed to if there was a proffer. I heard you saying you thought you had a clear path, but still, you know, you're trying to case for trial, but appeal if you tagged it as a property, we know what we're looking at and for what purposes and I don't want to take more of your time, but it just seems this is post-sale evidence. And then it just sounds like you're talking about bias and impeachment. There's a blurry line between this argument about the evidence rule on post sale and your arguments about impeachment and that it's blurry in the briefs to me and it's blurry just in the manner here. But here's my here's my question putting putting in context what you're arguing about the motion limiting. We don't have an assignment of error about a faulty jury charge. So my question is not withstanding what you're saying, you know about the warnings did the ruling by the trial judge in terms of motion of limity throw you off in terms of getting a charge to the jury where the jury would have understood the theory of the case that you're that you're presenting. Do you understand what I'm saying? I mean, I don't see that you're arguing that what happened disallowed a charge you otherwise would have been entitled to for the jury to understand the theory of the case. I'm just trying to see where if there's error, you know, is it reversible error? Well first as it goes to the documents, they're all identified on page 30 to 31 of the brief to the court to the court's point. There was no jury instruction that the court could possibly have ever given in this case to cure the air because the evidence was unrebutted. The defendants argued to the case correctly. We didn't rebut any evidence that the warnings were approved because we had no all the evidence was excluded. We couldn't rebut the CPS is the testimony that the full CPS. So you consider Bucky Biles to be adult and adult toy because all the evidence was excluded. So there you're honored. The error in this case began with the motion in limine and then it grew throughout the entire case through all the witnesses. Evidence was excluded plaintiff's witnesses and defendants witnesses and it reached its apex during oral argument when defendants argue to the jury that our evidence was unrebutted. Again, I go back to what I said. The jury was left with a parenteral finding by the CPSC that the Bucky Biles toy was not effective because the warnings had been approved and because they considered as adult toy and that's not true. Those are not the facts. I was getting ready to talk about the Zen Magnets case. If you're if your honors don't accept my theory of the documents that were excluded, read the Zen Magnets opinion. It's cited by the by the defendants. 841 F 3rd 1141 page 1149. In that case, the 10th Circuit struck down the CPSC magnet rule because the data set used by the CPSC was defective. The data set that the CPSC relied on was the history of Bucky Balls. It was the history of the dominant player in the in the game and what the 10th Circuit said that it appears from looking at that regulatory history that the commission's regulatory activity was predicated at least in part on enforcing the preexisting toy standard which prohibits designing and marketing magnet sets to children. Here the 10th Circuit is saying that Bucky Biles was regulated out of existence because it was a children's toy and the CPSC considered it a children's toy. The reason it was significant in in this case and the point the 10th Circuit was making to the to the to the on the record was M and O was the culprit that was marketing and selling Bucky Balls as a children's toy. Once it was taken out of the market, child injuries decreased to the point where there's no reason to to ban other companies from from selling that product. Alright, you've got a red light but I have two questions that I want you to answer before we shift to Mr. Bell so I can make sure I understand it. Alright, first of all, I just want you to tell me in a straightforward declarative sentence what the plaintiff's theory of liability in this case was. Then once you do that, I want to know what it is my takeaway about all this with the cross-examination of Nancy Nord. You all go into a whole lot of hoopla in terms of what she's qualified for, what she's not. Uh you accepted her in one respect as an expert, etcetera but but my second question is are you arguing to us that you were unable to cross-examine Miss Nord vis-a-vis the biases, etcetera or is that not an issue we we could deal with? So my first one is just tell me straight up. You said it's not a warnings case but warnings were integral here. So just kind of in a straight declarative, tell me what the the the plaintiff's theory of the case going forward. I don't mean when derailed by the rulings but I mean just going in. What was it? The theory of the case was that the Bucky Balls product was a children's toy. It was marketed to children and it was reasonably foreseeable that children would use that toy. Maxfield and Oberton's affirmative and that was the defect and the defect was that it violated the magnet standard. Maxfield and Oberton's affirmative defense was that warnings cured the defect and that was the theory of the case. The the the issue with regard to Nord, your honor and it's split in two. It's being able to cross-examine her opinions that were not disclosed that Bucky Balls were an adult toy as determined by the full Consumer Product Service Consumer Product Safety Commission and her opinion that the warnings were approved. That's this post-sale CPSC and and and we we we did not cross-examine her on her bias because of all of the bias evidence post dated the date of sale. Alright, you took her her her deposition was taken before y'all tried this case? Did not take her deposition. I relied on her disclosures as I was in. Uh huh. Okay. Therein is the deposition wasn't taken. So, all these things complained of you didn't know we're locking her down beforehand. You just knew based on her writings and papers. Is that it? No. During I specifically asked whether or not Maxfield and Overton would be taking the position of trial that it's warnings were approved. We were told during board council representing we were told and the court was told that Maxfield and Overton would not be taking the position that it's warnings were approved and we built our case around that and there was never. Okay. There was nothing in her disclosures about that. So, we accepted her disclosures and the representative of Maxfield and Overton's Council. Now, I don't fault put any fault on Maxfield and Overton's Council. They could not control these witnesses. They were advocates. They were attorneys. They came into trial for a purpose to give a testimony that they knew could not be cross-examined. Okay. Alright, that's helpful. I'm just trying to understand as a former trial judge how this was getting off the rails. If you have a pre-trial order listed, witnesses listed, you take people's depositions, you got them locked into what they're going to say and then, you know, suddenly kind of all these surprises are not knowing where they are. I'm not being critical but I've been trying to follow the sequence in reading all of this of how this all eventuated but if her deposition wasn't taken, I got it. Okay, I think I'm straight on that. You've reserved time for your rebuttal. So, let's hear from Mr. Bell. May it please this honorable court. I'm Lewis Bell. I've been Maxfield and Overton's lead counsel since the very beginning of this case and it's always a privilege to appear before this court. This is a state court suit brought under miscode annotated 11163 and the code requirement that the defect be proved at the time of sale is not arbitrary and it's not wrote. It's fundamental to whether or not a product is defective because 11163F says that a defect is determined by what the manufacturer knew at the time of the sale, what it could have known from reasonably available information or could have found out from reasonable care. So, a product seller can't be liable unless the plaintiff can prove one of those things. So, a seller's liability under the Mississippi Code, the product liability act is tied directly to what it knew or should have known at the time of the product sale. That's why the post-sale CPSC enforcement proceedings are irrelevant. That's why post-sale CPSC ingestion of magnet incidents were irrelevant. Nothing is relevant after the sale and what's interesting your honors is that we had an in limine ruling from Judge Reeves prior to trial. M&O moved to exclude post-sale CPSC proceedings. The sale was March of 2011. The enforcement proceeding to ban the sale of buckyballs happened in 2012. The Judge Reeves order was very clear, no post-sale proceedings but you know the judge, Judge Reeves didn't close the door. He didn't slam it. Several times during the course of this trial, the Jordan's attorney tried to use post-sale CPSC documents and Judge Reeves let him. In fact, the whole point of a motion in limine, it's not a definitive ruling. It's a preliminary ruling before trial that says, I'm going to make this ruling. If you later want to bring up this type of evidence, I've tentatively excluded. You know, you have to do it sidebar. You can't just throw it out there and let the jury see it. So that's, I mean, that seems conceivable. It seems like that's how Judge Reeves handled it and I saw where, like you said, he, it wasn't an iron clad rule. He did reconsider and allow certain evidence in. I mean, it seems to me that's just the typical discretionary type of rulings that district courts have to make with difficult evidentiary issues all the time. I think that's correct and the record reflects that. In fact, in the middle of the plaintiffs, in the middle of the Jordan's case, they asked Judge Reeves about documents from the CPSC that were after the sale that they wanted to cross-examine Nancy Nord with. I agreed with the procedure that they laid out and that the judge acknowledged. That's at ROA 902-06. We agreed. You don't have to talk about the context of the document. You can talk about the substance of the document. That happened twice with Nancy Nord. The request to admit that the Jordan's lawyer mentioned to the court earlier, that was during the enforcement proceeding to ban the sale of buckyballs. Judge Reeves let them take that request for admission, not tell them what it was about, but let them use the substance of that request in which the CPSC admitted that it accepted the warnings as part of the corrective action plan. Judge Reeves did it again with the fact witness, Alan Shone, who was an in-house CPSC lawyer but was a consultant for Maxfield and Overton. He was cross-examined with the CPSC letter that postdated the sale. Judge Reeves let them do that. The door was not closed. He also let the door open to post-sale evidence if there was a punitive face. Contrast that with the so-called Nancy Nord bias evidence. There was never a single proffer of what they wanted to cross-examine her with. Judge Reeves didn't see it. I didn't see it until after the trial in a post-trial motion. There was never an attempt to say, judge, I've got this post-sale information. I want to cross-examine her on her bias and her interest. Can I do it? It's post-sale. That was never presented to Judge Reeves. Mr. Bell, did the expert report prepared for Ms. Nord reflect that she had actually been advocating for your company in the past? Your Honor, it does not. The report, which is addendum A to the plaintiff's reply brief, has a list of publications. Her advocacy related to her belief that the federal government should have a limited role in regulating manufacturers. It had nothing to do with advocating for Maxfield and Overton. But the important point, I believe, is that the nine items that we saw for the first time after trial that related to the Nord bias evidence, eight of those nine were disclosed in her report. Eight of those nine. And it was the op-ed piece for the Wall Street Journal. And then she disclosed in her publication list her blog, Conversations with Consumers. The first Nord impeachment evidence was the Wall Street Journal op-ed piece. The next two quoted from that op-ed piece. The next five were excerpts from her blog where she talked about government overreaching, where the Consumer Product Safety Commission sued a company owner to hold him personally liable as leveraged to get a consent decree to ban the product. So eight of those nine bias things were disclosed to the Jordans. That's where they find them. That's what they wanted to use, but they never presented them to the judge to let Judge Reaves pass them on. Mr. Welch never asked questions about those have said that we asserted warnings as an affirmative defense. Warnings was not an affirmative defense in this case. If you look at the pretrial order are away to 1068 or the jury instructions 8582 or the special jury verdict interrogatory form 21136, there's not a word about warnings. We all know the pretrial order supersedes the pleadings. It controls the issues of fact and law and the evidence to be there's nothing in the issues about a warning. The jury was not instructed about warnings. They they prove the warnings in this case. They called a warnings expert Cynthia Rando the on product warnings, of course, are part of the design and when you challenge the design, you can't consider the design without considering the warnings that were on it. The only burden that was on Max Gill and Overton in the whole case was on our apportionment of fault defense that Mr. And Mrs. Jordan bore some responsibility for this, but the jury never got to that on the special verdict form. They never got past question number one. Do you find Bucky balls defective? No. The. The CPS approval is really a red hearing a straw man. If you will, we did not ask Alan Shum or Nancy Nord whether the CPSC approved it. The plaintiffs ask us. In a bench conference before we did jury for Dyer. Before we did opening statements, will you not use the word approved in for Dyer and opening and we agree to that? I agree to that. And that's. That's at 8688. The plaintiffs ask Alan shown they they they baited him into saying approved when they ask him a false question. Isn't it true in 2010 when Bucky balls were recalled? This was pre sale. That the CPSC staff age graded Bucky balls to be a children's product and he said no, you're leaving out that they approved the warnings. Nancy Nord very first question on cross examination question number one out of the box by the Jordans. Isn't it true that the CPSC did not approve the Nancy Nord knew what the course ruling was about post sales. She was careful not to open the door to post sale incidents, but she disagreed. The plaintiffs pressed and so she said I don't agree with that and and Nancy Nordic. Detail exactly what happened at the CPSC and that can be found at 8345 to 8348 Consumer Product Safety Commission in 2010 had five members. There were two vacancies. Meaning there were three active members, Nancy Nord and Inez Tenenbaum. The commissioners delegate. Safety and hazard investigations to the Office of Compliance. The Office of Compliance worked with Maxfield and Overton and they accepted. They actually approved the corrective action plan that Maxfield Overton submitted to them. And that was all pre product sales. So the product that the Jordans bought had the new warning on it. Keep away from all children. The plaintiffs very first witness in the case. Gene Ryder, a consumer product safety regulation expert, brought up the Sharon White report, which was a staff. Analysis that that said this is a children's product. That view was not adopted by the Office of Compliance. It was not adopted by the commissioners. That was the single most damaging piece of evidence liability evidence against us. In this case, once the plaintiffs introduced that evidence, we had no choice but to try to refute it, and we did that through Alan Schoen and Nancy Nord. They had on his tenant mom lined up. She was a fact witness listed in the pretrial order. Judge Reeves ruling would have kept her and Nancy Nord from testifying about things after the sale in 2011, but not before. We brought Nancy Nord because almost every day, almost every day during this two week jury trial, we heard about what the CPSC did or didn't do or what they found or didn't find. We brought someone with personal knowledge. She was there who explained exactly what happened. If they disagreed with her version of it all pre sale, they could have called ideas tenant bomb to refute it. They did not. This was a two week jury trial. Judge Reeves gave both sides. Liberal opportunities to prove their case. He revisited his rulings repeatedly as a district judge has to do when a testimony ruling has been made. The plaintiffs asked him to revisit four or five post sale documents. Judge Reeves fashioned a remedy that protected. You know the pro sale proceedings which were irrelevant by statute, but let the plaintiffs use the substance and content of those documents. What the plaintiffs did not do was give Judge Reeves a chance to rule  amazing to me that the Jordans are asking this court to reverse Judge Reeves on abuse of discretion on documents he never saw during the trial. That's a stretch and his discretion is broad, but he never had to employ it because he was never shown the documents to rule on and he reflects that in his order on a new trial record 6682. The defendant makes the point. The council did not make a proffer that he was expected to show through further examination of Nord. Obviously had this proffer occurred with the evidence laid out in the fashion which has been presented to us in these papers post trial motion, the court may have convinced been convinced that it's ruling was too restrictive. Judge Reeves is truly the most hardworking conscientious judge in the Southern District, maybe even the northern district to he deliberated over all of these rulings. He beat himself up over this as reflected in his musings in this order on the plaintiffs motion for a new trial. But in the end, he got it right. There was no proffer. There was nothing for him to consider and and and and changes ruling all. And your honors, that's that's all I have to say unless they're questions. Alright, just a curiosity question for me. I mean, I read a bit so Bucky balls was an adult toy or children's toy. That was the issue in the case. The warning says keep away from all Children, which says to me that's an adult product. And under the Consumer Product Safety Act regulations, you've got a general use product versus a children's product. If it's a children's product, you're subject to the magnet strength limitations. If it's if it's all right, well, without getting you down a rabbit hole. But I mean, I got a drawing of it, you know, trying to figure this out. You know, I haven't had children, got grandchildren, all that. I'm trying to figure out, you know, like a Rubik's Cube is an adult toy. I mean, anybody can deal with it. Right. But I mean, lots of adults back. I know that's old school, but lots of people would twist around with it. So this Bucky balls designed to be something that I add, though, you know, fidget around with it. Yeah. I mean, that, as I said, that's just a curio. I never heard of it before this case. Exactly. It's an adult desk toy, a stress reliever. I've been playing with them today during the court's argument as a Oh, my gosh. Well, the primo never asked a question that you don't know the answer to. I sure didn't know the answer to that one. I wouldn't ask the question, but I never heard of it. And I was just curious, you know, as to what it was. I hadn't. But then I saw the diagrams of, you know, sort of what happens once and when in the intestine and on and on and on. And so, you know, every parent's nightmare, you know, having something that a kid, you know, gets a hold to. But with the back and forth, you've helped me just to understand it was sort of an adult toy, as you say, and the magnets came loose. Okay. One last question. In the trial judge's post ruling or something, he seemed to express some contemplation of saying, well, I believe I was right the first time, but I may have made a mistake. Blah, blah, blah, blah. I mean, is that just more what you're saying, carefulness or do we take anything by the judge himself thinking he might have made an error here with respect to this? I think Judge Reeves was being very open about his grappling with the ruling on the post trial motion. But in the end, he believed he made the right ruling because the evidence of what was presented to him during the course of the trial for him to make a ruling on. Okay. All right. Thank you. Judge Clement, does this cost any additional questions for Mr. Bell? All right. Mr. Bell, hearing none, thank you. Back to you, Mr. Welch. You reserved your rebuttal time. Please, the court. Bucky Balls was a children's toy to answer Justice Stewart's question. We put in evidence through our marketing expert that Maxfield and Overton had sent their toys to children to market to children. These unboxing videos, plaintiff's exhibit 143, there were no marketing controls on any of these videos. Maxfield and Overton used children to market its product to children. Marketing to children is the definition of a children's toy. And there were additional exhibits similar to that that we did not get into evidence because they were post sale. Two of those exhibits, one on our exhibit list, one was a video six days after the sale of the product and ten days after the sale of the product. That was excluded. Maxfield and Overton sold its products to children's stores with names Giggles and One Two Kangaroo. But we couldn't get that into evidence because that was post sale. You don't go to Giggles and One Two Kangaroo to buy adult toys. That's a children's toy store. The question to Schoen that allegedly opened the door to this approval was, Mr. Schoen, please tell me what steps Maxfield and Overton took to comply with the standard once placed on notice that it applied. That was the question. That question did not in no circumstance at all, which should have evoked the response. It's an adult toy, and the warnings were approved. Those are opinions. He was not tendered as an expert to give those types of opinions. So we did not open the door to this evidence. The witnesses were laying and waiting to give that testimony. To sum this up, look, the initial error was the motion in limiting ruling. There's nothing in the Mississippi Product Liability Act to exclude post sale evidence. It's just not there. There was no basis for that evidentiary ruling. Mr. Welch, you've got a child with a devastating injury and all those facts there, and you've got your evidence. I mean, how can the jury verdict here come down to a motion in limiting ruling, which is part of the trial? I mean, how can the jury verdict you got zeroed out on the first question boil itself down to an abuse of discretion ruling on a motion limiting on post sale evidence, not the primary evidence? I mean, how can that be? Because it permeated the entire trial, Your Honor. I've structured my case around that in limiting ruling. Then we get to board doc, and we're told that warnings approval is not going to be part of the case, so I structure my case around that. Then we get into trial, and the error starts to spread. With the first witness, we're told for the first time that the judge's intent was to exclude all post sale evidence. For the first time, the error begins to spread. I don't get to ask Gene Ryder about post sale CPSC incidents, even though they're relevant. Think of it this way. If Braylon was the first child to be injured by this product, we wouldn't have been able to put in any evidence at all because all of it would have been post sale. I couldn't call on S. Tenenbaum because all of her testimony was based on post sale documents, but the error didn't stop there. Maxfield and Overton brings its witnesses forward and blurt out the warnings were approved by the full commission. We were never, that opinion was never disclosed. It was never disclosed as being the opinion of the full Consumer Product Safety Commission. And then, when I do what the court allows me to do, try to cross examine Ms. Nord on documents. Documents that clearly say, under oath, CPSC stating under oath that the warnings were not approved. All I get to do is say, you never presented them to Judge Reeves. So, to his point, if the judge never saw them and they weren't proper to him, how did we as the Court of Appeals say it was an abuse of discretion on a matter that he did not consider? All the CPSC documents were in the record. If the court will look into the testimony of Nancy Nord, we had a bench comment. No, that's not the question. Saying it's in the record can mean a lot of stuff. The question is, Counsel Ops has said, you did not present those up front in big time and say here they are, Your Honor, shaking them in your hand. Here they are. Not whether it's somewhere down in the record. Do you acknowledge that that didn't happen? That happened, Judge. What Mr. Bell is referring to is the biased documents. The CPSC documents were handed to the judge. The judge got a copy of the request for admissions. He touched that document. He touched the CPSC briefing package. He touched the administrative complaint. He touched every one of these documents. These are errors. These are all in the record. They're all in the record. Again, as this case moves forward, we get to closing and the apex of the error arises. They're allowed to tell the jury that it's unrebutted and that the central issue in the case of whether or not it goes to the defect, the central issue in the case of whether or not this is an adult toy, that that is unrebutted evidence and it has been decided by the Consumer Product Safety Commission. All right, Mr. Welch, you've got a red line. I'll give you one sentence to conclude. One sentence. Ask yourselves this question. Wouldn't the court like to know what the outcome of the verdict would have been had the jury known the facts? I would have liked to have known. The Jordans certainly would have liked to have known. And if the answer to that is yes, would the court like to know what the jury would have ruled had it known the facts? If the answer is yes, then our substantial rights were violated and the Jordans are entitled to a new trial. All right. Thank you, Mr. Welch. Thank you, Mr. Bell. I want to be equal opportunity. Mr. Welch, where are you? Here you are. No, geographically, where are you? Oh, Jackson, I'm sorry. All right. Mr. Bell, where are you? I'm in Jackson. We're a couple of blocks apart. All right. I'm just keeping geography notes. That's all. All right. Thank you both, counsel, for your briefing and argument. The case will be submitted and we'll get it decided. Appreciate it. Thank you.